THE LAW OFFICE OF ETHAN MORA
1140 E. Herndon Ave., Suite 103
Fresno, CA 93720

---

Thursday, April 20, 2023
*CCPA Letter to Coinbase*

**By U.S. Mail:**

Coinbase, Inc. (CA Entity Nos. C4315976; C3548456)
c/o C T Corporation System
818 West Seventh St., Ste. 930
Los Angeles, California 90017

Coinbase Inc. (Legal Team)
c/o CSC
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833-3505

Coinbase Custody Trust Company, LLC
c/o C T Corporation System
28 Liberty Street
New York, New York 10005

**Via Email**: legal@coinbase.com ; eric.wasik@coinbase.com ; dpo@coinbase.com ; help@coinbase.com ; support@coinbase.com

**Attachments:** *A, B*

Attn: Coinbase Legal (Erik Wasik, Senior Counsel, Customer Disputes)

Re: **Notice of Violations of California Consumer Privacy Act (§§ 1798.100** *et seq.***)**; California Consumer Legal Remedies Act (§§ 1770, *et seq.*); California's Shine the Light Law (§§ 1798.83 *et seq.*); and California Penal Code § 496 (buying/receiving stolen property)

Coinbase:

My office represents Ryan Dellone ("my client"), a California resident who has been a Coinbase customer since October 2013, in connection with the losses and harms he sustained as a result of cybersecurity breaches and/or unauthorized account access, which occurred in late 2021 and resulted in the theft of my client's cryptocurrencies as well as substantial interferences with my client's private, sensitive, confidential, personal, and financial information, data, and other assets hosted by Coinbase, on the Coinbase Platform.

At least three support tickets were opened by Coinbase related to this matter: Case # 09072112; Case # 09169654; and Case # 09112576.

1

THE LAW OFFICE OF ETHAN MORA
1140 E. Herndon Ave., Suite 103
Fresno, CA 93720

---

Thursday, April 20, 2023
*CCPA Letter to Coinbase*

## BACKGROUND

As of writing, my client still has not obtained complete and accurate customer account information from Coinbase in response to his request. Mr. Dellone is also still unable to log in to his Coinbase account; and for more than a year, Mr. Dellone has endured the wrongful deprivation of more than 2.06 bitcoins, despite Mr. Dellone: **(i)** timely reporting the fraudulent activity to Coinbase; **(ii)** sufficiently proving his identity to Coinbase upon Coinbase's request; and **(iii)** complying with the Dispute Resolution Process set out in Coinbase's (unconscionable and unenforceable) User Agreement.

Prior to December 2021, Coinbase exposed many of its customers' credentials, including Mr. Dellone's email address, to unauthorized third-parties. Not only did Coinbase leak its customers' email addresses to unauthorized third-parties, Coinbase allowed its customers' email addresses to be exploited by hackers who Coinbase knew, or should have known, were seeking to verify Coinbase customer phone numbers as part of concerted efforts to interfere with cellular phone subscription services used by Coinbase and its customers to "secure" assets in Coinbase's custody.

In the years leading up to the theft, Coinbase knew that bad actors were successfully leveraging leaked Coinbase credentials to identify, confirm, and unlawfully seize cellular services tied to Coinbase accounts. Coinbase also knew that its own "developer tools" and various vulnerabilities on Coinbase's webpages and in its operational security, gave the general public, including scammers and black-hat hackers, the ability to gain unauthorized access to consumer financial accounts hosted by Coinbase (on the Coinbase Platform).

Since at least 2017, Coinbase has known that unauthorized SIM Swaps pose uniquely severe risks to Coinbase customers in particular. Between 2018 and 2022, Coinbase observed a dramatic increase in the number of electronic financial transactions on the Coinbase Platform accomplished by unauthorized SIM Swaps—this rise in phone-based fraud was well documented by Coinbase users and the media.[1]

Before December 2021, Coinbase could have addressed multiple critical vulnerabilities on its Platform by simply complying with widely-known, industry-standard good practices. For instance, instead of programming its webpage response forms to leak customer-account-specific email addresses to unauthorized third-parties (*e.g.*, responding to a sign-up request with, "An account with that email already exists"), Coinbase could have easily reprogrammed its automated response

---

[1] See, *e.g.*, CoinTelegraph, *Round-Up of Crypto Exchange Hacks So Far in 2019 — How Can They Be Stopped?*, (published June 18, 2019); KrebsOnSecurity, *How Coinbase Phishers Steal One-Time Passwords* ("the phishing group appears to have identified Italian Coinbase users by attempting to sign up new accounts under the email addresses of more than 2.5 million Italians."); ZDNet, *Coinbase sends out breach notification letters after 6,000 accounts had cryptocurrency stolen* (published Oct. 1, 2021).

2

THE LAW OFFICE OF ETHAN MORA
1140 E. Herndon Ave., Suite 103
Fresno, CA 93720

---

Thursday, April 20, 2023
*CCPA Letter to Coinbase*

forms according to common sense (*e.g.*, "Please check your email for further instructions," or "We sent an email to that address").

No significant barriers could have reasonably prevented Coinbase from fixing its webpage response forms prior to December 2021.

Nevertheless, virtually anyone capable of making a prank phone call could, in combination with an unauthorized "SIM Swap" attack, use credentials leaked by Coinbase to take complete control, or wipe, or launder ill-gotten gains through, *etc.* hundreds if not hundreds of thousands of Coinbase customer accounts.

When I began assisting Mr. Dellone in January 2022, I requested (on multiple occasions) that Coinbase provide my office with Mr. Dellone's Coinbase account transaction reports, account history, and other relevant data that I believe is necessary for my office/Mr. Dellone to conduct a thorough investigation into the unauthorized access of his account, the breaches of the Coinbase Platform affecting my client's data, and the theft and current whereabouts of Mr. Dellone's assets, and to advise my client accordingly.

On January 3, 2022, I requested the following information from Coinbase (see *Attachment A*):

- The full transaction history for Mr. Dellone's account, from November 1, 2021 to the present, showing each and every buy and sell transaction, including the entire wallet addresses (both the sender and recipient addresses) and blockchain transaction IDs for every blockchain transaction involving his account assets;
- The Log-in history / Access (or Activity) Log for Mr. Dellone's account, showing the dates, times, IP addresses, geolocation data, session length, and browser types for all activity during the period of time from November 1, 2021 to the present; and
- All other data included in the statement of account for Mr. Dellone's Coinbase account.

Senior Counsel for Coinbase, Erik Wasik, responded to my request, initially by providing my office with an essentially useless "account statement" purporting to show transactions involving only Mr. Dellone's Coinbase Pro Account.

Mr. Wasik told me, via email, that Coinbase is only providing me and my client information "as a courtesy"—but California law requires Coinbase to provide the requested information.

Mr. Wasik also informed me that Coinbase would not consider restoring access to my client's Coinbase account "until he satisfies his negative balance with [Coinbase]"—the CCPA prohibits Coinbase from denying Mr. Dellone services, or providing Mr. Dellone a different level or quality services, in response to him exercising his rights under the CCPA.

3

THE LAW OFFICE OF ETHAN MORA
1140 E. Herndon Ave., Suite 103
Fresno, CA 93720

---

Thursday, April 20, 2023
*CCPA Letter to Coinbase*

On January 4, 2022, I reminded Mr. Wasik that "Mr. Dellone is a California resident; accordingly, he's afforded applicable statutory rights pursuant to, inter alia, the California Consumer Privacy Act ('CCPA')." See *Attachment A*. I also specifically requested, on behalf of Mr. Dellone, that Coinbase provide:

- Information regarding Mr. Dellone's interaction with Coinbase's products and/or services (including but not limited to the Coinbase website(s), application(s), and advertisements);
- Inferences drawn by Coinbase from any of the information identified in the CCPA to create a profile about Mr. Dellone reflecting his preferences, characteristics, psychological trends, preferences, predispositions, behavior, attitudes, intelligence, abilities, and aptitudes (for example, the days and times when Mr. Dellone tends to access his Coinbase account); and
- The categories of sources from which Coinbase collected Mr. Dellone's Personal Information, including but not limited to:
    - Unique personal identifier(s)
    - Online identifier(s);
    - IP address(es);
    - Email address(es);
    - Geolocation data;
    - Records of personal property;
    - Products or services purchased, obtained or considered, or other purchasing or consuming histories or tendencies;
    - Browsing history;
    - Search history; and
    - Log-in history.

On January 25, 2022, Coinbase provided its response in the form of a .TXT file.

My office subsequently determined that the information Coinbase provided is incomplete and/or inaccurate. For that reason, among others, Coinbase's responses to Mr. Dellone's requests are insufficient to satisfy Coinbase's requirements under the CCPA.

I. **CCPA Violations** (See *Attachment B*)

In violation of the CCPA, Coinbase has: **(a)** assisted criminal hackers involved in breaching the Coinbase Platform, or in their continuing efforts to exploit Mr. Dellone's assets and remain unknown to Mr. Dellone; **(b)** withheld information Coinbase has collected from and about my client's Coinbase account, including relevant records related to the scope of Mr. Dellone's sensitive and personal information affected by breaches of the Coinbase Platform; and **(c)** subjected Mr. Dellone's data to unauthorized access, exfiltration, theft, and disclosure that

4

THE LAW OFFICE OF ETHAN MORA
1140 E. Herndon Ave., Suite 103
Fresno, CA 93720

---

Thursday, April 20, 2023
*CCPA Letter to Coinbase*

Coinbase caused when it violated its duties to implement and maintain reasonable security procedures and practices appropriate to the nature and sensitivity of my client's data.

### A. *Right to Non-Discrimination*

Under the CCPA, businesses are not permitted to deny a customer goods or services, charge a customer a different price, or provide a different level or quality of goods or services to a customer, merely because a customer has exercised his or her rights under the CCPA. Coinbase has violated the CCPA by denying Mr. Dellone access to his Coinbase account for over a year (and counting), and by providing insufficient replies and incomplete or doctored information in response to Mr. Dellone's previous information requests regarding the breach of his consumer financial accounts and Coinbase's unauthorized leaks of his personal data.

### B. *Personal Information Security Breaches*

According to my investigation, Coinbase's webpage vulnerabilities allowed hackers to identify and confirm Mr. Dellone's Coinbase-associated email address and phone number; and based on that information, the hackers were able to exploit automated software programs and Coinbase's own "developer tools" in their attempts to brute force Mr. Dellone's Coinbase account password and/or engage in credential stuffing for the same purpose, prior to attempting to "SIM Swap" Mr. Dellone.

The hackers may have also been able to use Coinbase's developer tools to verify Mr. Dellone's Coinbase account data and check the balance of digital assets stored in Mr. Dellone's Coinbase account, prior to, or as a part of, their concerted efforts to steal his property.

Under the CCPA, any consumer—whose nonencrypted and nonredacted personal information; or whose email address in combination with a password or security question and answer that would permit access to the account—is subject to an unauthorized access and exfiltration, theft, or disclosure by a business, as a result of the business's violation of its duty to implement and maintain reasonable security procedures and practices appropriate to protect the information, based on the nature of the information. Aggrieved consumers are entitled to recover:

- Actual damages;
- Injunctive or declaratory relief; and
- Any other relief the court deems proper.

On December 14, 2021, and on previous and subsequent occasions, Coinbase improperly disclosed Mr. Dellone's first and last name, email address, and one or more Coinbase security answers (*e.g.*, phone number used with 2FA), and subjected to unauthorized access, exfiltration, theft, or

5

THE LAW OFFICE OF ETHAN MORA
1140 E. Herndon Ave., Suite 103
Fresno, CA 93720

Thursday, April 20, 2023
*CCPA Letter to Coinbase*

disclosure at least one of the following nonencrypted and nonredacted items of Mr. Dellone's personal information—his:

- Social security number;
- Driver's license number;
- Tax identification number;
- Financial account number;
- Bank card number combined with Coinbase access code and/or password that allowed hackers access funds in Mr. Dellone's bank account;
- Unique biometric data used to identify Mr. Dellone's identity; and/or
- Unique biometrics data stored for facial and/or voice and/or online behavioral recognition purposes.

### C. Prop 24 Rights

As of January 1, 2023, businesses, including Coinbase, are responsible for taking additional steps to protect Coinbase customers' private information, including:

- Ceasing to share information upon the consumer's request;
- Correcting any inaccurate personal information upon a consumer's request; and
- Taking reasonable security measures to protect personal information.

Coinbase has intentionally and unlawfully ceased sharing information with Mr. Dellone, apparently as a result of his requests for Coinbase's disclosure of information. Because Coinbase has ceased sharing information with my client, Mr. Dellone remains unable to determine the accuracy of the personal information Coinbase is sharing about him.

Coinbase also has not provided Mr. Dellone with complete or accurate statements of the personal information that Coinbase has collected on my client. Coinbase's failure to provide this information adversely impacts my client's right to correct inaccurate personal information that Coinbase has about him; and to limit Coinbase's use and disclosure of sensitive personal information that Coinbase has collected about him.

Because Coinbase has prevented Mr. Dellone from accessing his Coinbase account for over a year, my client has been unable to determine the accuracy of the personal information Coinbase has collected about him.

Additionally, at least during the period of time between December 2021 and February 2021, Coinbase failed to satisfy its obligations to implement reasonable security measures designed to protect the sensitive personal information Coinbase collected about Mr. Dellone.

THE LAW OFFICE OF ETHAN MORA
1140 E. Herndon Ave., Suite 103
Fresno, CA 93720

---

Thursday, April 20, 2023
*CCPA Letter to Coinbase*

### D. Harms Sustained As A Result of Breach

Mr. Dellone has suffered injuries stemming from Coinbase's loss and unauthorized exposure of his valuable, personal, private, and sensitive digital data, including:

(1) Continued risks to Mr. Dellone's PII, to the extent it is still in Coinbase's possession and subject to further unauthorized disclosures, for as long Coinbase fails to take appropriate measures to protect my client's PII;

(2) Lost or diminished value of his cyber-identification data—for instance, whereas legitimate buyers of user data compensate users with contracted-for services in exchange for personal information, now, as a result of Coinbase's disclosures to unauthorized third-parties, hackers can now obtain this data for free;

(3) Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and unauthorized use of Mr. Dellone's Personally Identifiable Information ("PII");

(4) Lost opportunity costs associated with efforts expended and Mr. Dellone's loss of productivity by attempting to mitigate the consequences of the Coinbase's actions and omissions, including but not limited to Mr. Dellone's lost time at an estimated average loss of $125 per hour in lost labor hours, which he has spent or must spend restoring the ability to log into and completely recover his Coinbase account; dealing with impersonation activities, including phishing emails; reviewing his credit reports; scrutinizing his financial information; mitigating his potential losses; detecting identity theft; and changing his passwords; and

(5) Future costs in terms of loss of time, effort, and money that will be expended to monitor, prevent, detect, contest, and repair the impact of the cyber-identification data compromised as a result of Coinbase's actions and omissions, for the remainder of Mr. Dellone's life.

### E. Requested Remedies For CCPA Violations

Mr. Dellone hereby demands that Coinbase:

(1) **Immediately provide Mr. Dellone access to his Coinbase account;**

(2) **Compensate Mr. Dellone for the actual costs he incurred as a result of the conversion of his property;**

(3) **Immediately cease sharing and selling Mr. Dellone's information; and**

7

THE LAW OFFICE OF ETHAN MORA
1140 E. Herndon Ave., Suite 103
Fresno, CA 93720

---

Thursday, April 20, 2023
*CCPA Letter to Coinbase*

**(4) To the extent Coinbase has not already taken reasonable security measures necessary to protect Mr. Dellone's personal information, immediately take such appropriate measures.**

## II. CLRA Violations

### A. Sections 1770(a)(5), (7), and (9)

Among other statements made by Coinbase to its customers regarding its purported use of customer data collected from and about its customers, Coinbase specifically made the following representations in violation of section1770(a)(5): **(a)** Coinbase claimed it used Cookies "to recognize" its customers and "to collect information about your [the Coinbase customer's] computer or other access device to mitigate risk, help prevent fraud, and promote trust and safety"; **(b)** Coinbase stated that it engages in the "monitoring of IP addresses" as part of what it believes is a "reasonable risk-based program" aimed at complying with Anti-Money Laundering and Know Your Customer regulations. When Coinbase made these statements, Coinbase knew it was collecting IP addresses, device IDs, PII, and installing Cookies, Flash Cookies, and Web Beacons on Mr. Dellone's devices, and collecting the information therefrom, primarily for purposes <u>not</u> related to security.

Among other statements, Coinbase also made the following representations, in violation of section1770(a)(7), which indicated that Coinbase's cybersecurity was of a particular quality, which it was not: **(c)** Coinbase claimed that no customer assets had ever been lost due to breach of the Coinbase Platform (*e.g.*, Coinbase Global Inc., SEC Form S-1, "What Sets Us Apart"); and **(d)** Coinbase represented that Coinbase customers must use a "branded" cellular telecommunications providers' services to access Coinbase's services and products via mobile device, and that Coinbase users are prevented from utilizing Voice-Over-Internet-Protocol (or "VOIP") numbers with their Coinbase accounts[2].

In violation of section 1770(a)(9), Coinbase advertised, without the intent to sell, its services as including a means by which Coinbase customers can: **(e)** limit their liability for stolen cryptocurrencies by timely reporting unauthorized transactions to Coinbase; and **(f)** reasonably resolve their disputes, specifically disputes concerning fraudulent transactions, with Coinbase.

---

[2] See, *e.g.*, User Agreement ("Further, you [the customer] authorize your wireless operator (AT&T, Sprint, T-Mobile, US Cellular, Verizon, or any other *branded* wireless operator) to use your mobile number, name, address, email, network status, customer type, customer role, billing type, mobile device identifiers (IMSI and IMEI) and other subscriber status details, if available, s*olely to allow verification of your identity and to compare information you have provided to Coinbase with your wireless operator account profile information for the duration of the business relationship.* See our Privacy Policy for how we [Coinbase] treat your data.") (emphasis added).

THE LAW OFFICE OF ETHAN MORA
1140 E. Herndon Ave., Suite 103
Fresno, CA 93720

---

Thursday, April 20, 2023
*CCPA Letter to Coinbase*

Additionally, in violation of section 1770(a), Coinbase represented that: **(g)** its custodial services included reasonable customer support services, including live agents who respond to customer phone calls, when Coinbase's custodial services did not, in fact, include such characteristics or benefits during the period of time between December 2021 and February 2022; and **(h)** US Dollars, which are legal tender, are essentially the same as USD Coins, which <u>not</u> legal tender—USD and USDC are not interchangeable assets. *See* Stamp Payments Act of 1862 (18 U.S.C. § 336).

### B. *Requested Remedies for CLRA Violations*

<u>Mr. Dellone demands that Coinbase</u>:

**(1)** **Individually and through its agents, servants, employees, and all persons acting under, in concert with, or for Coinbase, immediately cease collecting customer cyber-identification data that Coinbase does not reasonably use to help Coinbase detect fraud involving Coinbase customer accounts hosted on the Coinbase Platform.**

**(2)** **Immediately cease its circulation of either or both USD and USDC on its Platform, as continuing to do so constitutes a deceptive act or practice undertaken by Coinbase in its transactions with Coinbase customers that Coinbase intended to result and, which has in fact resulted in the sale or lease of goods (digital assets) or services (custodial services) to consumers.**

**(3)** **Take steps to purge VOIP numbers from, and prevent VOIP numbers from being used on its Platform.**

**(4)** **Provide written and/or other sufficient adequate assurances that it will immediately take steps to remove all public representations, and no longer make any future public statements, indicating that "no customer assets has ever been lost due to breach of the Coinbase Platform."**

### III. <u>Shine The Light Law Violations</u>

As Coinbase knows, Mr. Dellone's personal information has monetary value and can be sold for a profit or exchanged for services.

Mr. Dellone requested his account data from Coinbase in January 2022, February 2022, and April 2023, and on each occasion Coinbase failed to provide him with complete, accurate, and timely information disclosures.

Coinbase failed to comply with Cal. Civ. Code § 1798.83(b)(1) when it prevented Mr. Dellone from accessing his Coinbase account, diluting the value of Mr. Dellone's personal information by

9

THE LAW OFFICE OF ETHAN MORA
1140 E. Herndon Ave., Suite 103
Fresno, CA 93720

Thursday, April 20, 2023
*CCPA Letter to Coinbase*

foiling his efforts to correct misinformation, and (or because) Coinbase has deprived him of the opportunity to sell his personal information for financial gain. Accordingly, Mr. Dellone has not received the full value of the services for which he paid Coinbase.

Coinbase's failure to comply with Cal. Civ. Code § 1798.83(b)(1) has prevented Mr. Dellone from mitigating his ongoing injuries caused by the breach(es) of his financial accounts hosted by Coinbase on the Coinbase Platform.

Coinbase's failure to provide Mr. Dellone with the proper section 1798.83(b)(1) disclosures has deprived Mr. Dellone of value and caused him economic harm. Mr. Dellone has sustained, and continues to sustain, monetary injuries as a direct and proximate cause of Coinbase's violations of section 1798.83(b).

## IV. Criminal Code Violations

California Penal Code § 496(a) prohibits any person from buying or receiving "any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained."

Coinbase violated California Penal Code § 496 by obtaining, concealing, selling, and/or withholding personal property (Crypto-Assets and digital U.S. dollars) stolen from Mr. Dellone, and by aiding in such criminal conduct, knowing that said property was stolen.

Mr. Dellone's demands the return of his stolen assets, or a writing by Coinbase disclaiming all rights and title to:

- The **2.05698427** bitcoins currently located at Bitcoin Public Key Address, *bc1qjp79ak6fxm4h7j0tsrwqx2n2k4tcqqveqxrvgm*;

- The Security Token rewards (and/or tokens) or "gains" from Mr. Dellone's staked/baked/invested tokens earned through his Coinbase account, which are currently in Coinbase's possession;

- Any fungible substitute property that could serve in lieu of each unique asset converted by Coinbase on and after December 14, 2021.

Under California Penal Code § 496(c), Mr. Dellone is entitled to over $300,000—three times the amount of his actual damages, which exceed $101,763.00.

THE LAW OFFICE OF ETHAN MORA
1140 E. Herndon Ave., Suite 103
Fresno, CA 93720

Thursday, April 20, 2023
*CCPA Letter to Coinbase*

## CONCLUSION

Coinbase has caused Mr. Dellone damages in an amount exceeding 2.06 bitcoins plus $300,000, exclusive of costs and fees.

Should Coinbase wish to discuss my client's rights and his imminent claims against Coinbase (including but not limited to prospective causes of action based on Coinbase's failure to remedy the issues specifically outlined in this Letter), my contact information is below:

Email: EthanMoraLaw@pm.me

Phone: (559) 370-1485

Thank you,

The Law Office of Ethan Mora
Ethan E. Mora, Esq.
*Attorney for Mr. Ryan Dellone*

---

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:
Coinbase, Inc.
c/o CSC
2710 Gateway Oaks Dr., Ste 150N
Sacramento, CA 95833

9590 9402 8037 2349 7352 83

2. Article Number: 22 0410 0000 5080 1156

**COMPLETE THIS SECTION ON DELIVERY**
A. Signature
X _____ ☐ Agent ☐ Addressee
B. Received by (Printed Name): SHAMEEL MOHAMMED
C. Date of Delivery: APR 24
D. Is delivery address different from item 1? ☐ Yes ☐ No

3. Service Type:
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053   Domestic Return Receipt

11