**BRYAN CAVE LEIGHTON PAISNER LLP**
Alexandra C. Whitworth (California Bar No. 303046)
Adam A. Vukovic (California Bar No. 301392)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111-4070
Telephone:      (415) 675-3400
Facsimile:      (415) 675-3434
Email:alex.whitworth@bclplaw.com
        adam.vukovic@bclplaw.com
Attorneys for Defendants

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN DELLONE,<br><br>              Plaintiff,<br><br>     vs.<br><br>COINBASE, INC., et al.,<br><br>              Defendants. | Case No. 1:23-cv-01408<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND TO DISMISS UNDER 12(b)(1) OR, IN THE ALTERNATIVE, TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*Filed concurrently with Declarations of Suellen Black and Adam Vukovic*]<br><br>Date: May 13, 2024<br>Time: 1:30 p.m. |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

   **PLEASE TAKE NOTICE THAT** on May 13, 2024 at 1:30 p.m., or as soon thereafter as this matter may be heard, in United States District Court for the Eastern District of California, located at Robert E. Coyle United States Courthouse, 2500 Tulare Street, Fresno, CA  93721, Courtroom 6, 7th floor, Defendant Coinbase, Inc. will and hereby does move this Court (1) to compel individual arbitration of Plaintiff Ryan Dellone's claims and (2) to dismiss this case

under Fed. R. Civ. P. 12(b)(1), or, in the alternative, to stay this action pending completion of those arbitration proceedings.

Defendant submits this Motion under the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), based on Plaintiff's acceptance of the Coinbase User Agreement, in which he agreed to individually arbitrate the types of disputes at issue in this case. This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the accompanying Declaration of Suellen Black and the exhibits attached thereto, the pleadings and other documents on file in this case, all other matters of which the Court may take judicial notice, and any further argument or evidence that may be received by the Court at the hearing.

DATED:  March 15, 2024        **BRYAN CAVE LEIGHTON PAISNER LLP**

By: */s/ Alexandra Whitworth*
  Alexandra Whitworth
Attorneys for Defendant Coinbase, Inc.

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

- 1 -

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

As early as 2013, Plaintiff Ryan Dellone expressly and affirmatively entered into a User Agreement with Defendant Coinbase, Inc. ("Coinbase"). Plaintiff continued to use Coinbase services after he initially created his account, and in so doing, accepted updated user agreements, including an update in September 2021. Plaintiff does not dispute he has a contract with Coinbase; indeed, he attached a version of Coinbase's User Agreement (with an arbitration clause) as an exhibit to his original Complaint, and references it multiple times both in his original Complaint and the First Amended Complaint. *See* Compl., Ex. A, Dkt.1-2; Pl. Compl., Dkt. 1, ¶¶ 274-298, 443-450, 478, 540-579; First Am. Compl., Dkt. 18, ¶¶ 213, 216-17, 230-243, 245, 256-260. In agreeing to Coinbase's User Agreement,  Plaintiff made two commitments to Coinbase that are relevant to this motion: first, he agreed that "any dispute arising out of or relating to" either the User Agreement or the services provided by Coinbase "shall be resolved through binding arbitration," including any dispute raising claims "based in contract, tort, fraud, misrepresentation, or any other legal theory."[1] Second, Plaintiff agreed that an arbitrator, not this Court, would determine whether a dispute fell within the scope of the parties' arbitration agreement. Now, despite those clear commitments, Plaintiff has filed this action in federal court.

There can be no serious dispute that a valid arbitration agreement exists. By way of this motion and declaration in support, Coinbase easily meets its burden of proving that the parties entered into an agreement to arbitrate; under the Federal Arbitration Act, this is all that Coinbase needs to show to prevail on this motion. And even if there were a credible dispute about whether Plaintiff's claims are arbitrable (there is not), that dispute is to be resolved by an arbitrator pursuant to the User Agreement's delegation clause. Courts across the country have consistently enforced the arbitration provision found in various versions of Coinbase's User Agreement, and in fact, the Ninth Circuit has now twice reversed district courts for denying Coinbase's motions to compel arbitration. *See Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1015–16 (9th Cir. 2023)

---

[1] *See* Black Decl., Ex. 5, § 8.3 (2021 Coinbase User Agreement)

Bryan Cave Leighton Paisner LLP
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4070

(holding that delegation provision in Coinbase's arbitration agreement was enforceable); *Berk v. Coinbase, Inc.*, 840 F. App'x 914, 916 (9th Cir. 2020) (holding that plaintiff's claims fell within the scope of Coinbase's arbitration agreement). It is no surprise then, that district courts have repeatedly required plaintiffs to arbitrate their claims against Coinbase, as the User Agreement requires. *See Aggarwal v. Coinbase, Inc.*, 2023 WL 4935003, at *6–7 (enforcing arbitration agreement and compelling arbitration); *Donovan v. Coinbase Glob., Inc.*, 649 F. Supp. 3d 946, 954–56 (N.D. Cal. 2023) (same); *Alfia v. Coinbase Glob., Inc.*, 2022 WL 3205036, at *3–4 (N.D. Cal. July 22, 2022) (same); *Kattula v. Coinbase Global, Inc.*, 2023 WL 4373385, at *6 (N.D. Ga. July 6, 2023) (same); *Tarverdiyeva v. Coinbase Global, Inc.*, 2021 WL 4527960, at *2 (M.D. Fla. Sept. 8, 2021) (same); *Mahmoud v. Coinbase, Inc.*, 2022 WL 18799657, at *1 (Cal. Sup. Ct., Oct. 19, 2022) (same); *Pierre v. Coinbase, Inc.*, 2021 WL 1538015, at *3–4 (Sup. Ct., N.Y. Cnty. Apr. 14, 2021) (same); *Valdes v. Coinbase, Inc.*, No: 1:21CV11303 (D. Mass. Nov. 29, 2021) (same); *Sultan v. Coinbase, Inc.*, 354 F. Supp. 3d 156, 162 (E.D.N.Y. 2019) (same); *Strozier v. Coinbase, Inc.*, No. 651451/2018 (Sup. Ct., N.Y. Cnty. Sept. 10, 2018). This court should follow the Ninth Circuit and courts across the country, and grant the Motion to Compel. Disputes between Coinbase and its customers arising from Coinbase's services are subject to binding arbitration, and threshold issues of enforceability and arbitrability are to be resolved by the arbitrator.

In any event, Plaintiff's alleged claims certainly "aris[e] out of or relat[e] to" the User Agreement and/or Coinbase's services. At a high level, Plaintiff alleges that Coinbase failed to protect his digital assets and personal information by permitting unauthorized individuals to access his Coinbase account. Based on those allegations, Plaintiff asserts at least 15 claims against Coinbase. Plaintiff's Coinbase account is, of course, a "Coinbase service" expressly governed by the terms and conditions of the applicable User Agreement, placing his claims squarely within the scope of the User Agreement's arbitration clause. And despite the fact that Plaintiff attempts to plead around the User Agreement by alleging that his claims relate to

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

- 3 -

1   Coinbase's Privacy Policy, that policy is incorporated by reference into the User Agreement and
2   is indisputably "related to" the User Agreement and Coinbase's services.

3     Plaintiff could and should have pursued his claims in arbitration. He agreed to arbitrate
4   claims that "arise out of" and "relate to" the User Agreement and Coinbase's services, such as
5   the claims he has asserted in the First Amended Complaint. Coinbase respectfully requests that
6   the Court order Plaintiff to do only that which he previously promised to do—submit his dispute
7   to binding arbitration. Coinbase further asks the Court to dismiss this action under Fed. R. Civ.
8   P. 12(b)(1) or, at least, stay it pursuant to the Federal Arbitration Act.

9   **II.  BACKGROUND**

10     **A. Plaintiff's Customer Relationship With Coinbase.**

11     Coinbase, Inc. operates an online platform for buying, selling, and transferring
12   cryptocurrencies like Bitcoin, the cryptocurrency at the center of Plaintiff's claims. *See*
13   Declaration of Suellen Black ("Black Decl."), ¶ 3.[2] To access Coinbase's services, prospective
14   users are required to create an account. Black Decl., ¶ 5. Plaintiff created his account and first
15   affirmatively accepted the Coinbase User Agreement on October 21, 2013, generating an entry
16   in Coinbase's User Activity Log known as Admin. *Id*., ¶¶ 6- 7 & Ex. 1. The 2013 User
17   Agreement included an arbitration provision. *Id*., Ex. 2.

18     Coinbase periodically updates the terms of its User Agreement. On June 1, 2014, Plaintiff
19   affirmatively accepted an updated User Agreement, generating an Admin entry for that action.
20   *Id.*, ¶ 9 & Ex. 3. The 2014 User Agreement included a broad arbitration provision requiring that

21

22   [2] Although Coinbase Global, Inc., was named in the original Complaint, the First Amended Complaint drops all
23   claims against it. To the extent Plaintiff seeks relief against Coinbase Global, Inc., those claims are subject to
  arbitration. Coinbase Global, Inc. is the parent company of wholly owned subsidiary Coinbase, Inc. *See* Black Decl.,
24   ¶ 3. Plaintiff has no independent relationship with Coinbase Global outside the User Agreement with Coinbase,
  Inc., and  "charges against a parent company and its subsidiary [that] are based on the same facts and are inherently
  inseparable" are arbitrable "even if the parent is not formally a party to the arbitration agreement." *Marselian v.*
25   *Wells Fargo & Co*., 514 F. Supp. 3d 1166, 1172 (N.D. Cal. 2021) (quotation marks omitted). And for good reason.
  "If the parent corporation was forced to try the case, the arbitration proceedings would be rendered meaningless and
26   the federal policy in favor of arbitration effectively thwarted." *Sam Resifeld & Son Import Co. v. S.A. Eteco*, 530
  F.2d 679, 681 (5th Cir. 1976). To the extent they are being asserted, Plaintiff's claims against Coinbase Global are
27   identical to his claims against Coinbase, Inc., and for the same reasons fall within the scope of the applicable User
  Agreements.

28

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

"ANY DISPUTE ARISING UNDER THIS AGREEMENT SHALL BE FINALLY SETTLED ON AN INDIVIDUAL BASIS IN ACCORDANCE WITH THE AMERICAN ARBITRATION ASSOCIATION'S RULES FOR ARBITRATION OF CONSUMER-RELATED DISPUTES AND YOU AND COINBASE HEREBY EXPRESSLY WAIVE TRIAL BY JURY." *Id.*, Ex. 4 at § 8.2. The 2014 User Agreement also notified Plaintiff:

> "[Coinbase] may amend or modify this Agreement at any time by posting a revised User Agreement on the Coinbase Site and such changes or modifications shall be effective at such time. By continuing to access or use the Coinbase Services after we have posted a revised Agreement, you agree to be bound by the modified Agreement. **In the event that you do not agree to be bound by the modified Agreement, you must cancel your Coinbase Account in the manner described in Section 2.6 below and otherwise cease accessing or using the Coinbase Services.**"

*Id.*, Ex. 4 at Preamble (emphasis original).

Over the years, Coinbase updated its User Agreement multiple times, and most relevant to this motion, again updated its User Agreement in 2021. The User Agreement in effect during the time period at-issue in Plaintiff's Complaint became effective on September 30, 2021 ("2021 User Agreement"). *Id.*, ¶ 11. Coinbase made this updated User Agreement available to its customers on its website and mobile platforms. *Id.* Furthermore, each time a user trades on the Coinbase retail platform (as Plaintiff did), they receive an email confirmation of the trade, which contains a link to the then-current User Agreement. *Id.,* ¶ 12.  Plaintiff accessed, transacted in and used his account after the effective date of the 2021 User Agreement. *Id.*, ¶ 11.

The 2021 User Agreement included a broad arbitration and delegation provision:

> **If we cannot resolve the dispute through the Formal Complaint Process, you and we agree that any dispute arising out of or relating to this Agreement or the Coinbase Services, including, without limitation, federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation, or any other legal theory, shall be resolved through binding arbitration, on an individual basis (the "Arbitration Agreement)....**

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA  94111-4070

**This Arbitration Agreement includes, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement. All such matters shall be decided by an arbitrator and not by a court or judge.**

*Id.*, Ex. 5, § 8.3. Plaintiff attaches the December 6, 2021 User Agreement as an exhibit to his First Amended Complaint and premises certain of his claims upon the terms of that agreement, effectively conceding that he agreed to Coinbase's User Agreement. *See* Dkt. 1-2. The arbitration provisions in both 2021 versions of the User Agreements are identical. *Cf.* Black Decl., Ex. 5, § 8.3; Dkt. 1-2, § 8.3.

### B. Plaintiff's Allegations

Plaintiff alleges that on December 14, 2021, unknown DOE defendants gained access to Coinbase account and liquidated his account via a series of transactions. *See* First Amended Compl., Dkt. 18, ¶¶ 6–8, 108–117. Plaintiff further alleges that the alleged unauthorized access exposed his personal information, and that Coinbase's customer service obstructed his efforts to recover his cryptocurrencies. *Id.*, ¶¶ 137–189. Based on these allegations, Plaintiff avers 15 claims against Coinbase. All are subject to the parties' binding arbitration agreement.

### III.    LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq., applies to "any written provision in a 'contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract.'" *Portland Gen. Elec. Co. v. U.S. Bank Trust Nat'l Ass'n*, 218 F.3d 1085, 1089 (9th Cir. 2000) (quoting 9 U.S.C. § 2). The term "involving commerce" is the "functional equivalent of the more familiar term 'affecting commerce'[,]" which represents the "broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (*per curiam*) (citation omitted).

Here, the alleged transactions involved interstate commerce because Plaintiff, a resident of California, contracted to do business over the internet with Coinbase, a Delaware corporation. First Amended Compl., Dkt. 18, ¶ 5. The use of internet technologies to purchase or transfer

- 6 -

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

1   digital currencies satisfies the "involving interstate commerce" requirement. *See United States*

2   *v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) ("[T]he Internet is an instrumentality and channel

3   of interstate commerce." (internal quotation marks and citation omitted)). Accordingly, the FAA

4   governs the 2021 User Agreement's arbitration clause.

5          The FAA provides that an agreement to arbitrate "shall be valid, irrevocable, and

6   enforceable, save upon such grounds as exist at law or in equity for the revocation of any

7   contract." 9 U.S.C. § 2. The Supreme Court has emphasized that the FAA creates a strong, liberal

8   federal policy that favors arbitration. *See, e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500

9   U.S. 20, 25 (1991). Any ambiguities relating to the scope of the arbitration clause must be

10  resolved in favor of arbitration. *See Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr.*

11  *Univ.*, 489 U.S. 468, 476 (1989).

12         Against that backdrop, this Court's role in deciding Coinbase's motion to compel

13  arbitration is narrow. "[T]he [FAA] leaves no place for the exercise of discretion by a district

14  court, but instead mandates that district courts shall direct the parties to proceed to arbitration on

15  issues as to which an arbitration agreement has been signed." *Chiron Corp. v. Ortho Diagnostic*

16  *Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quotation marks and citation omitted). Generally,

17  the Court has authority to examine two "gateway" issues only: "(1) whether a valid agreement

18  to arbitrate exists and . . . (2) whether the agreement encompasses the dispute at issue." *Id*. Here,

19  however, the parties expressly agreed to delegate to the arbitrator questions related to the

20  interpretation, scope and enforceability of the arbitration agreement. Black Decl., Ex. 5, § 8.3.

21  Such delegation clauses are separate, antecedent arbitration agreements. *See Rent-A-Center,*

22  *West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010)

23         Accordingly, where, as here, the parties have "clearly and unmistakably" delegated

24  questions of arbitrability to the arbitrator, the Court's role is further limited to determining the

25  enforceability of the delegation clause. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th

26  Cir. 2015). In other words, the sole question before the Court is the enforceability of the parties'

27  agreement to delegate to the arbitrator "disputes arising out of or related to the interpretation or

28                                                  - 7 -

Bryan Cave Leighton Paisner LLP
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4070

1    application of the Arbitration Agreement, including the enforceability, revocability, scope, or

2    validity of the Arbitration Agreement" or any portion thereof. Black Decl., Ex. 5, § 8.3.

3    **IV.     THE COURT SHOULD COMPEL ARBITRATION AND DISMISS OR STAY**

4    **THE PROCEEDINGS**

5           Plaintiff unmistakably agreed to Coinbase's 2021 User Agreement, which requires his

6    claims be submitted to and resolved by an arbitrator. Because the 2021 User Agreement

7    expressly delegates "gateway" arbitration questions to the arbitrator—including questions about

8    the enforceability, scope, and interpretation of the arbitration agreement itself—this Court need

9    not evaluate the agreement's validity or whether its arbitration clause encompasses Plaintiff's

10   claims. But, even if this Court were to reach those questions, controlling law requires it to compel

11   arbitration here.

12          **A.  Plaintiff and Coinbase Agreed to Final, Binding Arbitration.**

13          "[A]rbitration is a matter of contract," *AT&T Techs., Inc. v. Commc'n Workers of Am.*,

14   475 U.S. 643, 648 (1986) (citations omitted), and courts apply "general state-law principles of

15   contract interpretation" to determine whether an agreement to arbitrate exists. *Goldman, Sachs*

16   *& Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) (quotation omitted). An arbitration

17   agreement need only be in writing, and no signature by either party is necessary. *See* FAA, 9

18   U.S.C. § 2; *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1439 (9th Cir. 1994) ("While the FAA

19   requires a writing, it does not require that the writing be signed by the parties." (internal quotation

20   and citation omitted)). Under California law, "[m]utual assent, or consent, of the parties is

21   essential to the existence of a contract." *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 943

22   (2022) (quotation omitted).

23          Here, when Plaintiff created his Coinbase account, he affirmatively assented to the 2013

24   User Agreement, and his action generated an Admin entry in Coinbase's User Activity Log

25   showing the date and time of acceptance as October 21, 2013 at 7:48 p.m. PDT. Black Decl., ¶

26   7 & Ex. 1. This constitutes a classic "clickwrap" contract, "in which website users are required

27   to click on an 'I agree' box after being presented with a list of terms and conditions of use."

28                                                    - 8 -

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

1   *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–76 (9th Cir. 2014). "[C]ourts routinely

2   find [clickwrap agreements] valid and enforceable because the user must affirmatively

3   acknowledge receipt of the terms of the contract." *McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-

4   JD, 2018 WL 1913832, at *2 (N.D. Cal. Jan. 24, 2018); s*ee also Kamath v. Coinbase*, Case No.

5   23-cv-03533-CRB, Dkt. 30 (N.D. Cal. March 5, 2024) (enforcing clickwrap acceptance of

6   Coinbase's User Agreement and granting motion to compel arbitration); *Flores v. Coinbase, Inc.*,

7   2023 WL 3564756, at *5 (C.D. Cal. Apr. 6, 2023) (same);  *Levin v. Caviar, Inc.*, 146 F. Supp.

8   3d 1146, 1157 (N.D. Cal. 2015) (finding that contract was formed "when the plaintiff clicked on

9   a button to indicate assent to an agreement in which the terms themselves were accessed by

10  hyperlink" (citation omitted)); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 582 (N.D. Cal.

11  2020) (enforcing arbitration agreement where users were presented with hyperlinked terms and

12  notified that, "[b]y tapping Sign Up . . . you agree to our Terms and Conditions"); ; *Savetsky v.*

13  *Pre-Paid Legal Services, Inc.*, No. 14–03514 SC, 2015 WL 604767, at *3 (N.D. Cal. Feb. 12,

14  2015) ("Because '[b]lanket assent to a form contract is still assent, . . .' courts generally find that

15  clickwrap agreements are enforceable." (citation omitted)).

16  Plaintiff then affirmatively assented to an updated User Agreement in 2014, and his

17  action generated an Admin entry in Coinbase's User Activity Log showing the date and time of

18  acceptance as June 1, 2014 at 1:59 p.m. PDT. Black Decl., ¶ 8 & Ex. 3. When Plaintiff accepted

19  the 2014 User Agreement, he confirmed that he assented to be bound by that Agreement and all

20  of its terms. *See* Black Decl., Ex. 4 at Preamble. These included a change-in-terms provision,

21  which stated that Coinbase could "modify this Agreement at any time by posting a revised User

22  Agreement on the Coinbase Site and such changes or modifications shall be effective at such

23  time." *Id.*, Ex. 4 at Preamble. If a user did not agree to be bound by an updated User Agreement,

24  he "must cancel [his] Coinbase Account [] and otherwise cease accessing or using the Coinbase

25  Services." *Id*.

26  Coinbase periodically invoked this change-in-terms provision, including on September

27  30, 2021, when it updated the User Agreement on its website and made a copy available to its

28

- 9 -

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

customers on its web and mobile platforms. *Id.*, ¶ 11, Ex. 5. Plaintiff accessed, transacted on, and did not close his account after Coinbase updated the User Agreement on September 30, 2021. *Id.*, at ¶ 12. This was sufficient to constitute Plaintiff's consent to the updated version of User Agreement. *See, e.g., Stover v. Experian Holdings, Inc.*, 2018 WL 11462838, at *3 (C.D. Cal. Oct. 31, 2018), *on reconsideration in part*, 2019 WL 13241682 (C.D. Cal. Jan. 30, 2019), *and aff'd*, 978 F.3d 1082 (9th Cir. 2020) (plaintiff agreed to updated terms and conditions by using the defendant's website, when original agreement had a change-in terms provision that that the terms "may be updated from time to time," and that "[e]ach time" plaintiff "access[ed] ... the ... Product Website," she would "signify [her] acceptance and agreement, without limitation or qualification, to be bound by the then current agreement"); *DeVries v. Experian Information Solutions, Inc.*, No. 16-cv-02953-WHO, 2017 WL 733096, at *7−8 (N.D. Cal. Feb. 24, 2017) (enforcing updated Terms of Use where prior Terms of Use included a change-in-terms provision); *Matera v. Google Inc.*, No. 15-cv-04062-LHK, 2016 WL 5339806, at *2, 17 (N.D. Cal. Sept. 23, 2016) (holding that "users of the individual Gmail service agreed to [an updated terms of service agreement] upon its posting" where the earlier terms of service stated that modifications would be posted on their website and that if account holders "do not agree to the modified terms for a Service, [they] should discontinue [their] use of that Service"); *Campbell v. eBay, Inc.*, 2014 WL 3950671, at *4 (N.D. Cal. Aug. 11, 2014) (enforcing eBay's updated User Agreement because "eBay's change in policy adding shipping costs to the calculation of Final Value Fees" was based on "contract terms as to which Plaintiff agreed").

Plaintiff's assent to the 2021 User Agreement is evident–indeed, although he attaches a later User Agreement as an exhibit to his Complaint, he invokes many of the terms of the September 30, 2021 User Agreement as a basis for his claims against Coinbase. *See e.g.*, Compl., Ex. A, Dkt. 1-2. By doing so, he cannot dispute that he consented to the 2021 User Agreement and is bound by the arbitration clause therein.

**B.  The 2021 User Agreement Clearly and Unmistakably Delegates Questions of Arbitrability to the Arbitrator.**

Parties to an arbitration agreement "may delegate 'gateway' questions of arbitrability to an arbitrator." *McLellan*, 2017 WL 4551484, at *1. Courts will enforce such a delegation provision "when it manifests a clear and unmistakable agreement to arbitrate arbitrability." *Id.* Where "the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc.*, 139 S. Ct. at 528. Even where there is no delegation provision in the arbitration agreement, courts have routinely held that incorporation of an arbitral forum's rules into an arbitration agreement provides "clear and unmistakable evidence that the parties intended that the arbitrator would decide arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130–31 (9th Cir. 2015) (citing cases). "Virtually every circuit to have considered the issue has determined that incorporation of the [AAA's] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013). The same rule applies to consumer arbitration provisions. *See, e.g.*, *Gerlach v. Tickmark Inc.*, 2021 WL 3191692, at *4 (N.D. Cal. July 28, 2021) (applying *Brennan* to a consumer arbitration provision).

The 2021 User Agreement contains an express delegation provision that "manifests a clear and unmistakable agreement" to delegate the gateway question of arbitrability to an arbitrator. *McLellan*, 2017 WL 4551484, at *1. It provides that all "disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement . . . shall be decided by an arbitrator and not by a court or judge." Black Decl., Ex. 5, § 8.3. This delegation provision unmistakably delegates arbitrability questions to an arbitrator, not to this Court, as recently confirmed by the Ninth Circuit Court of Appeals. *See Bielski*, 87 F.4th at 1015 (reversing the district court's denial of Coinbase's motion to compel

- 11 -

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

arbitration, determining an identical delegation provision was not unconscionable and that the district court erred in refusing to enforce it). Four other U.S. District Courts over the last year have likewise upheld substantially similar arbitration provisions and delegation clauses in various versions of Coinbase's User Agreement. *See Flores v. Coinbase, Inc.*, 2023 WL 3564756, at *5 (C.D. Cal. Apr. 6, 2023) (interpreting Coinbase's 2022 User Agreement, which contains a substantively similar delegation provision, and concluding that "the parties clearly and unmistakably delegated the question of arbitrability to the arbitrator"); *Aggarwal*, 2023 WL 4935003, at *6–7 (same); *Pearl v. Coinbase Glob., Inc.*, 2023 WL 1769190, at *3 (N.D. Cal. Feb. 3, 2023) (same); *Donovan v. Coinbase Glob., Inc.*, 2023 WL 2124776, at *5 (N.D. Cal. Jan. 6, 2023) (same).

Moreover, the 2021 User Agreement expressly incorporates the AAA's rules, Black Decl., Ex. 5 § 8.3, which independently "constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Flores*, 2023 WL 3564756, at *5. Most relevant here, AAA Rule 14(a) states that the arbitrator has "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See* Vukovic Decl. ¶ 5 & Ex. 1, at R-14(a). The incorporation of the AAA rules in the 2021 User Agreement thus further confirms that the parties intended to delegate gateway arbitrability issues, including the "existence, scope, or validity" of the arbitration provision in the 2021 User Agreement, to the arbitrator.

Because the parties have demonstrated their "clear and unmistakable" intention to arbitrate any question as to arbitrability, *Rent-A-Center*, 561 U.S. at 69, n.1, this Court "must respect the parties' decision as embodied" in the 2021 User Agreement and enforce the delegation provision so long as it is not substantively unconscionable. *Henry Schein*, 139 S. Ct. at 528. As the Supreme Court and Ninth Circuit have recognized, "delegation clauses are essentially severable mini-agreements within agreements to arbitrate." *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1101 (9th Cir. July 21, 2023) (citing *Rent-A-Center*, 561 U.S. at

- 12 -

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

70-73). There is nothing in Coinbase's delegation provision that would render it substantively unconscionable, as several courts have recently held. *See Bielski,* 87 F.4th at 1015; *Donovan*, 2023 WL 2124776, at *6; *Pearl*, 2023 WL 1769190, at *7; *Kattula v. Coinbase Global, Inc.*, 2023 WL 4373385, at *5–6 (N.D. Ga. July 6, 2023); *Aggarwal*, 2023 WL 4935003, at *6–7, *Flores*, 2023 WL 3564756, at *7.

### C. The 2021 User Agreement Is Valid, Enforceable, and Encompasses Plaintiffs' Claims.

Even if the Court declines to enforce the parties' delegation agreement, it should nevertheless compel arbitration because (1) the 2021 User Agreement is valid and enforceable, and (2) Plaintiff's claims fall squarely within the scope of that agreement.

#### 1. The 2021 User Agreement Is Presumptively Valid and Enforceable.

Arbitration agreements governed by the FAA are presumed valid and enforceable. *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987). This reflects Congress's intent to reverse longstanding judicial hostility toward arbitration and evinces a "liberal federal policy favoring arbitration agreements." *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (citations omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA therefore mandates enforcement of an arbitration agreement unless grounds exist "at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The plaintiff bears the burden to overcome the presumption of validity by showing that the agreement is unconscionable. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000). To be "substantively unconscionable," an arbitration "term must be so one-sided as to shock the conscience." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Deve. (US), LLC*, 55 Cal. 4th 223, 246 (2012).

Plaintiff cannot meet that burden. Two judges applying California law have recently found similar Coinbase user agreements to be valid and enforceable. *Alfia*, 2022 WL 3205036, at *3–4; *Kattula*, 2023 WL 4373385, at *5–6. The plaintiffs in *Alfia* argued that the arbitration provision in their agreements was substantively unconscionable because "it prohibits class-wide

- 13 -

claims" and allegedly "provides greater benefit to Coinbase" than to its users. *Id.* at *4. The court rejected both arguments. First, the court recognized that "[t]he Supreme Court has affirmed the enforceability of class-action waivers." *Id.*; *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011); *Carter v. Rent-A-Center, Inc.*, 718 F. App'x 502, 504 (9th Cir. 2017) (interpreting "*Concepcion* as foreclosing any argument that a class action waiver, by itself, is unconscionable under state law or that an arbitration agreement is unconscionable solely because it contains a class action waiver"). Second, the court held that the arbitration "provision binds both parties to arbitrate designated claims" and thus does not generate overly harsh or one-sided results. *Alfia*, 2022 WL 3205036, at *4. The court in *Kattula* similarly concluded that Coinbase's arbitration provision did "not lack mutuality" because it provided that "all disputes between the user and Coinbase 'will be resolved by binding arbitration.'" 2023 WL 4373385, at *5. The 2021 User Agreement, which is materially identical to those addressed in *Alfia* and *Kattula*, binds both users *and* Coinbase to arbitrate their claims, and, further, stipulates that both the user "and Coinbase are each waiving the right to a trial by jury and the right to participate in a class action." Black Decl., Ex. 5 § 8.3. The provision is thus not "one-sided."

### 2. Plaintiff's Claims Fall Within the Scope of the Arbitration Clauses.

Under the 2021 User Agreement, Plaintiff and Coinbase agreed broadly to arbitrate any claims that either arise out of or relate to the 2021 User Agreement or the "Coinbase Services," which are defined broadly as "the services provided by Coinbase." Black Decl., Ex. 5 at Preamble. "An agreement that requires the parties to arbitrate 'any dispute arising out of or relating to' an agreement is intended 'to reach all aspects of their relationship.'" *Neurosigma, Inc. v. De Salles*, No. 13-cv-07973-DMG, 2014 WL 12803168, at *3 (C.D. Cal. Jan. 31, 2014) (quoting *Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 732 (9th Cir. 2006)).

Here, all of Plaintiff's claims fall within the scope of the arbitration clause in the 2021 User Agreement because they arise out of or relate to Coinbase's provision of services to its users. For example, Plaintiff's Sixth, Seventh, Eighth, Fourteenth, and Seventeenth  claims generally allege Coinbase, either intentionally or negligently, allowed unauthorized transactions

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

on his account. *See e.g.*, First Amended Compl., ¶¶ 327–361; ¶¶ 418–447; ¶¶ 481–497. Plaintiff's First, Fourth, and Eleventh claims generally allege that Coinbase (or unidentified other defendants) failed to properly protect or otherwise unlawfully disclose his personal identifying information and other data. *See id*. at ¶¶ 261–277; ¶¶ 307–317; ¶¶ 389–401. In addition, the Twelfth claim, for intentional misrepresentation, and the Thirteenth claim, for negligent misrepresentation, generally allege that Coinbase made untrue representations to Plaintiff about Coinbase services.. *Id.* at ¶¶ 402–417. Finally, claims Sixteen and Eighteen aver breaches of various consumer protection statutes arising from the same alleged conduct—failing to protect Plaintiff's account and personal information from incursion. *Id.* at ¶¶ 468–480; ¶¶ 498-524.

In other words, these are all allegations that stem directly from Coinbase's services. Because all claims focus on Coinbase's conduct, and its provision of services to Coinbase users, they plainly "relat[e] to ... the Coinbase Services" and are therefore subject to individual arbitration. *See* Black Decl., Ex. 5 § 8.3. Indeed, the 2021 User Agreement specifically addresses account security and the parties' obligations in the event of unauthorized transactions:

> You are responsible for creating a strong password and maintaining adequate security and control of any and all IDs, passwords, hints, personal identification numbers (PINs), API keys or any other codes that you use to access the Coinbase Services. Any loss or compromise of the foregoing information and/or your personal information may result in unauthorized access to your Coinbase Account(s) by third-parties and the loss or theft of any Digital Currency and/or funds held in your Coinbase Account(s) and any associated accounts, including your linked bank account(s) and credit card(s). . . . ***We assume no responsibility for any loss that you may sustain due to compromise of account login credentials due to no fault of Coinbase and/or failure to follow or act on any notices or alerts that we may send to you.***

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA  94111-4070

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

*Id.*, Ex. 5 § 7.12 (emphasis added). Accordingly, there can be no dispute that Plaintiff's claims arise out of and relate to the 2021 User Agreement.

Plaintiff will likely argue that certain of his claims are not subject to arbitration because they are based on alleged breaches of the Privacy Policy instead of the 2021 User Agreement. *See*, *e.g.*, Compl. ¶¶ 307–317. This is a transparent attempt to avoid his binding agreement to arbitrate his claims—an attempt that, in any event, fails. Plaintiff's claims are inextricably tied to the "Coinbase Services" as defined in the 2021 User Agreement. Moreover, Plaintiff's invocation of the Privacy Policy supports Coinbase's argument that his claims fall within the scope of the 2021 User Agreement. These claims plainly arise out of or relate to the 2021 User Agreement because Coinbase's Privacy Policy is incorporated by reference into the 2021 User Agreement. Indeed, the first paragraph of the 2021 User Agreement states:

> By signing up to use an account through coinbase.com, pro.coinbase.com, APIs, or the Coinbase mobile application (collectively the "Coinbase Site"), *you agree that you have read, understand, and accept all the terms and conditions contained in this Agreement including Section 8.2. "Arbitration; Waiver of Class Action", as well as our Privacy Policy*, Cookie Policy, and E-Sign Consent Policy.

Black Decl., Ex. 5 at Preamble (emphases added). The words "Privacy Policy" were shown in blue, indicating a hyperlink which, when clicked, routed the user to the text of the Privacy Policy. The Privacy Policy is referenced eight more times throughout the 2021 User Agreement, and six of these references also include a hyperlink to the relevant document. *Id.*, Ex. 5 §§ 1.4, 3.8, 6.1, 9.4, Appendix 2, Appendix 3. Moreover, Section 9.4 of the 2021 User Agreement explicitly states that "[t]his Agreement, the Privacy Policy, E-Sign Consent, and Appendices *incorporated by reference herein* comprise the entire understanding and agreement between you and Coinbase as to the subject matter hereof[.]" *Id.*, Ex. 5 § 9.4 (emphases added). Thus, the 2021 User Agreement clearly and unequivocally incorporates the Privacy Policy.[3] Accordingly, the

---

[3] The 2014 User Agreement also explicitly incorporates the Privacy Policy. *See* Black Decl., Ex. 4, § 6.3.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

arbitration provisions in the 2021 User Agreement would apply to Plaintiff's claims. *See, e.g.*, *In re Anthem, Inc. Data Breach Litigation*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *9–10 (N.D. Cal. May 27, 2016) (holding that defendant's privacy policies were incorporated by reference into its contracts with plaintiffs where "each contract includes several specific references to [the] privacy policies" and "called attention to the [] privacy policies and gave instructions on how consumers could review these policies in greater detail").

Because all of Plaintiff's claims focus on Coinbase's provision of services (or alleged failure to provide services) to him as a customer, the claims plainly arise out of and relate to the 2021 User Agreement. The Court should compel individual arbitration of all of Plaintiff's claims.

### D. Plaintiff Would Still Be Required to Arbitrate His Claims under the 2014 User Agreement.

Coinbase's motion should be resolved by reference to the User Agreement effective September 30, 2021 (or even the materially identical December 6, 2021 put forth by Plaintiff), but the result would be the same under the 2014 User Agreement because (1) Plaintiff assented to the agreement by continuing to use Coinbase Services after being informed of the update; (2) the agreement is enforceable; and (3) Plaintiff's claims arise out of or relate to Coinbase Services and the applicable User Agreements and Privacy Policy.

#### 1. Plaintiff and Coinbase Agreed to Binding Arbitration in the 2014 Agreement.

When Plaintiff affirmatively accepted the 2014 User Agreement, and generated an Admin entry by his action, he confirmed that he assented to be bound by that agreement and all of its terms. Black Decl., Exs. 2, 4. These included a change-in-terms provision, which permitted Coinbase to "amend or modify th[e] [User] Agreement by posting on the Coinbase Site or emailing to [Plaintiff] the revised [User] Agreement." *Id.*, Ex. 4 at Preamble. Plaintiff's "sole and exclusive remedy" if he did "not agree with any such modification" was "to terminate [his] use of the Services and close [his] account." *Id.* Plaintiff accepted the 2014 User Agreement on

June 1, 2014. *Id.*, ¶ 9, Ex. 3. By doing so, he agreed not only to the change-in-terms provision, but also to the arbitration provision in the 2014 User Agreement.

Courts have routinely held that continued use of an internet-based service is sufficient to evidence assent where the provider clearly notified its users that it reserved the right to modify the terms of service at any time and informed users that they should stop using the service if they disagreed with the updated terms of service. *See Stover*, 2018 WL 11462838, at *3; *DeVries*, 2017 WL 733096, at *7−8; *Matera*, 2016 WL 5339806, at *2, 17; *DeVries*, 2017 WL 733096, at *7; *Campbell*, 2014 WL 3950671, at *4; *MySpace, Inc. v. The Globe.com, Inc.*, 2007 WL 1686966, at *10 (C.D. Cal. Feb. 27, 2007). In short, agreement can be inferred if (1) the user is alerted when first signing up for the service that the terms of service may be modified at any time, (2) the user is subsequently notified of a change in the terms of service, and (3) the user continues using the service after the notification. All three conditions are satisfied here.  This means that by assenting to the 2014 User Agreement, and continuing to use Coinbase's services, he assented to the 2021 User Agreement by way of the change-in-terms provision in the 2014 User Agreement.

Furthermore, even if Claimant were to argue that he was bound by the 2014 User Agreement instead of the 2021 User Agreement (which would be odd, given that he attached  a 2021 User Agreement to the Complaint), the 2014 User Agreement includes an arbitration provision that covers the same disputes and issues as the 2021 User Agreement, and delegates questions of arbitrability to the AAA. *See id.*, Ex. 4, § 8.2. In addition, the 2014 User Agreement also incorporates the Coinbase Privacy Policy. *See id.*, Ex. 4, § 6.3.  For the same reasons discussed above, Plaintiff's claims would still be subject to arbitration under either User Agreement.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

E.  **There Is No Requirement that Plaintiff Arbitrate His Claims against Both Coinbase and AT&T in the Same Forum.**

Plaintiff contends that arbitrating his claims against both Coinbase and AT&T in separate fora would likely render him "unable to obtain full, effective, and final relief on all his claims" and that "Plaintiff's right to obtain restitution, full compensatory damages, or replacement, or restoration of his assets… [in] independent arbitration proceedings… would be impacted and potentially conflict with a prospective ruling by an arbitrator interpreting only the terms of the AT&T agreement, absent coordination, and rulings enforceable in those matters."   First Amended Compl.,  Dkt. 18, ¶¶ 215, 222. Nothing in the AAA Consumer Rules would prohibit Plaintiff from arbitrating his claims against AT&T and separately against Coinbase due to any sort of inability of a claimant to "obtain full, effective, and final relief." In fact, the Rules indicate quite the opposite, stating that "[t]he arbitrator may grant any remedy, relief, or outcome that the parties could have received in court[.]" Decl. of A. Vukovic, ¶ 4.

F.     **This Action Should be Dismissed, or in the Alternative Stayed Pending Completion of Arbitration.**

Rule 12(b)(1) deprives the Court of subject matter jurisdiction when an enforceable arbitration agreement exists, as it does here. *Chamlee v. Jonesboro Nursing & Rehab. Ctr., LLC*, 2019 WL 6042273, at *5 (N.D. Ga. Aug. 14, 2019); *Thomas v. Sherwin P. Robin & Assocs., P.C.*, 2017 WL 8186864, at *2 (N.D. Ga. Sept. 7, 2017), *report and recommendation adopted*, 2017 WL 8186865 (N.D. Ga. Oct. 20, 2017) ("[If] a valid arbitration clause exists between the parties ... this Court must dismiss the case under Fed. R. Civ. P. 12(b)(1) because it lacks subject matter jurisdiction."). Alternatively, this Court should stay this lawsuit pending the outcome of the arbitration.

When a dispute covered under an arbitration clause is brought in federal court, the court must either dismiss or stay the action upon application of a party. *See* 9 U.S.C. § 3. The district

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

Bryan Cave Leighton Paisner LLP
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4070

1  court has no discretion to deny a stay. *See, e.g., BrowserCam, Inc. v. Gomez, Inc.,* 2009 WL

2  210513, at *3 (N.D. Cal. Jan. 27, 2009) ("A motion to stay . . . is mandatory and must be granted

3  as to all matters within the scope of the arbitration agreement."). Accordingly, Coinbase requests

4  that the Court dismiss, or in the alternative, stay this action under Section 3 of the FAA. Coinbase

5  requests that the Court stay this action under Section 3 of the FAA.

6

## V.    CONCLUSION

7

8  For the reasons set forth herein, Coinbase respectfully requests that the Court (1) compel Mr.

9  Dellone to arbitrate his claims and (2) dismiss or stay this action pending completion of the

10  arbitration.

11

12

13  DATED:  March 15, 2024.            **BRYAN CAVE LEIGHTON PAISNER LLP**

14

15                                     By:  */s/ Alexandra Whitworth*

16                                          Alexandra Whitworth
                                           Attorneys  for  Defendants  Coinbase,  Inc.  and
17                                          Coinbase Global, Inc.

18

19

20

21

22

23

24

25

26

27

28

Bryan Cave Leighton Paisner LLP
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4070